My client's corporate name is Northeast Colorado Cellular, Inc. It does business under the name Viera Wireless, and I'll refer to it as such in my argument today. In the Telecommunications Act of 1996, among a variety of other things, Congress sought to encourage the expansion of the national cell phone network. One aspect of that statute seeks the reduction of impediments imposed by local governments upon the installation of telecommunications facilities such as cell towers. My client applied for the permission to build a cell tower in North Platte, Nebraska. That application was denied by the City Council of North Platte, and that denial is what led to this lawsuit. 47 U.S.C. section 332 sub c sub 7 sub 3 is the key to the two issues raised in this appeal. That statute provides any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and shall be supported by substantial evidence contained in a written record. North Platte's decision to deny Viera's application for a conditional use permit was made in a one-sentence motion reflected only in the minutes created by the city's clerk. That motion denied the CUP application, quote, based on the following factual findings. Five, the use is not in harmony with the character of the area, and it is not the most appropriate use of the land as it is a historic neighborhood, and the tower could decrease property values in the area. That is the entire sum and substance of North Platte's reasoning in the matter. How do we know that the minutes are insufficient as of writing and record? Your Honor, the courts across the country have taken two basic approaches, and I think it's fair to say there's a split in the circuit courts on what the in writing requirement means. The majority position, I believe, and that was acknowledged by this court judge here to be the majority position, and it's been previously acknowledged by this court to be the majority position, requires three aspects in order for a decision to be in writing for purposes of the TCA. The writing has to be separate from the written record. The writing has to describe the reasons for the denial, and third, the writing has to contain a sufficient explanation of the reasons for the denial to allow a review in court to evaluate the evidence so that it can conduct the substantial evidence review that's required by the statute. So in this case, what's the separate writing from the record? There is no separate writing from the record, Your Honor. The only writing that exists is the minutes of the city council, and the written record is the minutes of the city council. There is one writing. It's a writing created by the city clerk. Presumably the council approves it, but it's a writing that's created by the city clerk based on Nebraska statutes. It's not a requirement based on the Telecommunications Act. The Nebraska Open Meeting Statutes require any local government like the city council to prepare minutes of its meetings, and that's what was done in this case. Okay, so is it a record in the sense of a transcript, or is it a summarization by the clerk? It is a summarization, and the summarization is quite short. I'll talk about that in a little bit when it comes to the substantial evidence part of it, but the minutes are, I assume, pretty standard for city council minutes. They're five pages long. The complete minutes are contained in the record. Two of those five pages deal with the ERO's CUP application. The other three pages deal with other matters before the North Platte City Council at the same night this hearing was held. The alternative to the majority view that has these three requirements for whether or not a decision is in writing is reflected in cases out of the 11th and 4th Circuit, which holds simply that as long as it looks like it's in writing, that's good enough for the statute. In fact, the 4th Circuit, the case that came out of there was a CUP application where the city clerk had taken a stamp that said denied, stamped it on the application, and sent it back to the applicant, and that was deemed sufficient by the 4th Circuit to be in writing for the purposes of the statute. Do you know the Supreme Court has granted certain T-Mobile South exactly on that question? I agree, Your Honor. The case is T-Mobile South versus the City of Roswell. The cert grant came down last Monday, and while the question presented in T-Mobile South's cert petition is relatively narrow, I think when the court looks at the Roswell case itself, you'll see that it's quite similar to what we've got here. In the Roswell decision that the Supreme Court will hear in the fall, a cell phone company applied for the ability to build a 150-foot cell tower in that instance. In the City of Roswell, Georgia, the city held a hearing. Unlike the hearing here, there was actually a transcript of the hearing in the Roswell case, so we know what people actually said verbatim. It was transcribed as you'd have a court reporter sitting there, including the motion and the discussion among the council members. And when the city council denied T-Mobile's cell application in that case, it sent T-Mobile a one-sentence letter that said, Your application has been denied. It didn't set out any reasons, didn't set out any rationale, didn't point to any particular evidence on which that decision was based. And the arguments in the cert petition, presumably the arguments in the merits briefs, and presumably the Supreme Court's opinion when it is rendered, assuming that it is, will address the interplay between the minutes and the one-sentence letter, what is required to be in writing for purposes of the Telecommunications Act, what is not sufficient. Let me ask you this. Would it create a problem if we were to wait? Your Honor, my client... Do you need... I mean, I know your client would like a decision today, but if there is a problem, what would it be? The problem is we can't provide adequate coverage in the North Platte area right now. Are there any issues in this case that would not be resolved by that one? Yes, the T-Mobile case that's been granted by the Supreme Court does not address the substantial evidence issue at all. One question presented... Say that again. I didn't hear what you said. The cert grant in the T-Mobile case addresses only the in-writing issue. It does not address whether or not there was substantial evidence to support that decision. A separate writing. Right. That's correct. Right. Well, we don't have a separate writing here. We do not. But the grant was on the issue of a separate writing. Is that right? The question presented spoke about whether or not a separate writing that gave no reasons was adequate to be in writing for purposes of the TCA. What I was trying to convey to the Court is when you read the Roswell opinion, you'll see that what the Eleventh Circuit did in that case was to look at the minutes and the transcript of the hearing and said, even though there isn't any rationale in this one-sentence letter, we can look to the transcript and we know what the moving City Council person said was her reason for making the motion to deny. We know what the other City Council people said in terms of why they thought the application should be denied. And that's sufficient for our purposes, said the Eleventh Circuit. And so as long as there's this one-sentence letter and we can reconstruct through other documents how the City Council got to where it got, that's sufficient to be in writing for purposes of the TCA. That's the issue that the Supreme Court will review this fall. Presumably the arguments will be in October or November. Judge Riley, to get back to the question you posed, my client is not able currently to provide adequate cell phone coverage in North Platte. I certainly understand the inclination the Court may have to say, this issue is keyed up in front of the United States Supreme Court. We need to take our cue from them. Let's sit and wait. Each month that passes that my client can't have a cell tower in North Platte is one more month that it can't compete with Verizon and U.S. Cellular and the other cell phone companies that also provide cell phone service in North Platte. Is this the only place in North Platte that you can possibly build a tower that will solve the problems that you have? It's the only place in North Platte that will solve the particular problem that's at issue in this case. My client currently has either four or five towers that exist in either the city limits of North Platte or around North Platte. Verizon has cell towers. U.S. Cellular has cell towers in North Platte. This particular cell tower relates to the central part of the town and the focus of it from my client's perspective is on downtown North Platte. This would be the only place within this quote historical neighborhood that you would have to be within this historical neighborhood that you'd have to build your tower someplace in this historical neighborhood, is that right? So if it's decided that you're affecting the historical neighborhood then there's no other place that you can go, is that what you're saying? That is what the record would reflect, I think, your honor. Here's the evidence that exists. When my client made the application for this particular cell tower site it told the city council that it had performed an analysis of the area in order to determine A, what its current coverage is, B, what it would take to get the sort of coverage that it thinks it needs to provide adequate service to its customers, and C, had surveyed all of the areas within three-tenths of a mile, I believe is what the application says, and this was the only site that would meet all those criteria and then still be allowed, from a zoning standpoint, to have a cell tower placed on it. I want to come back to the historic neighborhood, your honor, because I think there are some real issues with regard to whether this is in fact a historic neighborhood. But in answer to your question, the record shows that for the central part of North Platte, my client concluded that this was the one place that would work for it, yes. And that's where you bought the property that built it? That's correct. Now where is this specifically? Is it north of the railroad tracks in North Platte? Your honor, I'm not sufficiently specific with central North Platte. I think Mr. Stack can tell you. I don't know is the unfortunate answer to that question. It's in the center of town, roughly. As a practical matter, if we were to decide with this issue pending the Supreme Court, I would think whoever the losing party would petition for cert, petition for rehearing and bank, and then petition for cert, and maybe we'd have a decision eventually anyway. I'm just wondering. That certainly is all entirely possible, your honor. I won't talk on behalf of North Platte whether they would petition for cert, but I assume that if the court affirms the district court in the interim here, that moving for rehearing non-bond would be a possibility for my client, and following cert petition would also be an interesting possibility for my client. I agree. That said, I don't want that. I understand. Well, your urgency is a concern, but it wouldn't be that economic to build that tower in the next six months and then have to tear it down, would it? Well, we can't build the tower without North Platte's approval. I assume that if this court reverses, let's say hypothetically this court were to reverse Judge Girard on the in-writing requirement, say this decision was not sufficiently in-writing for purposes of the TCA and remand, I assume with directions that the district court, under an order, bring judgment to my client. In that event... I think it would say you might have to tear it down if you build it. If that happened, I think the tower would be built pursuant to a federal court final judgment. I don't think we'd be required to tear anything down, even if the Supreme Court decided that the in-writing requirement was something different than what this court said it was. So I doubt off the top of my head that there would be a situation where the tower had to come down. But I understand the court's concern. Certainly, when the case is sitting in the Supreme Court, I understand the efficiency in waiting for the decision. Your time's running out. How do you... I mean, I've heard your brief, but how do you argue? What's your argument on... It's just plain language, plain language. We've got a writing here. There's nothing in the law that says you have to have a separate writing. The statute does not. You're correct, Your Honor. What the statute says is this decision shall be in writing and supported by substantial evidence containing a written record. And I think the rationale for requiring the writing to be different from the written record is so that the local government body gives it sufficient thought to provide a decision that a reviewing court, in this case, a federal court... Okay, my point is, why do we not have an in-writing here and a record that arguably shows substantial support or whatever that language is? They are two separate issues. And I think the reason that the writing should be separate is so that the court can understand why. This court has to review the district court's decision reviewing the city council's decision. And the federal courts have to understand why the city council did what it did in order adequately to assess the substantiality of the evidence that relates to it. Should we really be reviewing that? I mean, is that... Because then you lead to the cities having to write opinions. And they're getting their lawyers to write opinions in small communities like North Platte and even smaller. I agree that's a concern, and I think this court's cases say that that's not required. But I think there has to be enough so that you can at least understand how the council got to where it did. What the council can't do, I think, Your Honor, is to say, we don't like cell towers, or we don't like beer, or we don't like people complaining at us, and just deny for no particularly good reason. Well, that's the second clause, the substantial evidence. It does, but unless the city articulates its decision in some way that allows the court to understand its rationale, and I think that's what's missing here, it's really hard for a reviewing court to do a substantial evidence review. Well, it says that it damages the aesthetics of this historical community of the city of North Platte, doesn't it? It doesn't say that exactly, Your Honor. Well, I know it doesn't say that exactly. I'll tell you exactly what it says, and I'll tell you why I think the evidence is lacking. I'm running out of time. The use is not in harmony with the character of the area, and it is not the most appropriate use of the land as it is a historic neighborhood, and the tower could decrease property values in the area. That's the one sentence that the minutes have for the decision. There are actually three things involved in that, as I read it. The use is not in harmony with the area, it's not the most appropriate use of the land as it is a historic neighborhood, and the tower could decrease property values in the area. On the substantial evidence question, what Judge Gerard did was to say the second aspect of that, it is not the most appropriate use of the land as it is a historic neighborhood, doesn't matter because that's really surplusage. He's got a footnote where he says roughly that. He took the historic neighborhood idea and moved it up so it related to the in harmony provision, and then he found no substantial evidence to support the decrease in property values. And I think that when you have to do that in order to make sense out of a decision, that suggests that the decision itself was not sufficiently explained to allow an effective judicial review. Well, how do you respond to the argument that we're asking an awful lot of small communities, or anybody but particularly small communities, to write at the level of the Supreme Court or the Court of Appeals or a federal judge somewhere? I think the law is crystal clear that that level of detail is not required. And I understand the concern about where do you draw the line between denied with no rationale and full findings of fact and conclusions of law. I think everybody but the Fourth Circuit agrees that it has to be somewhere in the middle of those two circumstances. And the question presented by this case is where exactly do you draw that line? I think the line needs to be drawn in a way that a federal judge who's tasked by the statute to review the City Council's decision is able to understand why it did what it did in order to determine whether there's substantial evidence to support it. Well, this one thought he could. He did. There's no question about it. He also went outside the written record to find his own evidence. The Internet research didn't stick to the written record. If we look at the actual evidence that supports the idea that this is a historic neighborhood, it consists of one sentence also. If you look at the minutes of the City Council meeting, it lists a dozen people, three couples and six individuals, gives their addresses, and then it says, and this is directly from the minutes, all spoke in opposition to the tower stating the following reasons, colon, it is not appropriate or harmonious for the historic neighborhood, it could decrease property values of the homes in the area, the tower could be dangerous to the public, the tower will be an eyesore for the busy intersection, there are other places in North Platte that would be better suited for the tower. That is the sole sum and substance of the evidence, with the exception of some photographs that are mentioned in the briefs, on the historic character of this neighborhood. Well, you have to concede that almost everything in North Platte is historic in some way or another, isn't it? Well, I'll concede that North Platte is a town that was created by the railroads back in the 1870s, and there are certain old houses there. The Buffalo Bill. Scott's Restaurant, sure. But it also has railroad tracks, it has industrial areas, it has a downtown that doesn't have any historic residences in it. That's the railroad tracks of the First Transcontinental Railroad? Your Honor, I don't think that makes every word in North Platte a historic area. The question is, is this cell tower site such a thing? And the evidence is exceedingly thin on it. Take a look at the ten photographs that are in the record that Judge Gerard relied on. That's how he got to the historic character of this neighborhood. Some of them appear to be old houses. Some of them, to me, don't look that old. Are they historic? I don't know. We don't even know where those houses are because they aren't identified anywhere. You can't just, I think what the TCA means is, a local government can't just say, we don't like it, deny historic. There actually has to be some evidence to support that, and I think there is not here. Okay, time's expired. Thank you. I'll ask you at the end if you have anything to add that's new. Okay. Mr. Stack? Thank you, Your Honor. Good morning. Good morning. I pledge to support Douglas Stratt for, I believe, the city of North Platte. I make my apologies. I sometimes have some difficulty hearing. My wife says I have a lot of difficulty, but I do admit it when I occasionally have a little trouble hearing, so I'll get my apologies out of the way first. The cases on these issues, and there are cases on these issues, are all over the place. Before you get into it, and I don't mean to throw you off, but I guess I am, what is your position on this Supreme Court cert? Well, what's your position on that? We'd like to be able to accommodate the arrow one way or the other, but the fact of the matter is, as it stands now, the neighbors in the neighborhood that are in opposition to this tower are pleased that the tower doesn't exist, and if the tower doesn't exist now, they're going to be pleased. I guess if these issues can be resolved one way or the other by having the Supreme Court make that decision, we have no objection to delaying it. Okay, well, I didn't figure you would, but I would have said that in fewer words. Has there been this hassle? Council says there are three towers in North Platte now. Has there been this hassle with each of them when they were erected? Admittedly, no, we've not had this hassle. Mr. Stack, I'd like to hear your answer to Judge Beam's question about the historic nature of North Platte. Is there any place that you could build that wouldn't be of historic nature? No. It's a very historic town. Joe's Dine and Dance is gone, so we don't have to worry about that, right? It's been gone for many years. So you've already permitted three towers without problem? And everywhere else it's historic? We have permitted other towers, several other towers. I know I was being facetious. The entire town is not historic. We have newer developed parts of town. This particular tower, I think it's fair to say that this particular tower is at the intersection of Forth and Willow, which is pretty much right in the middle of town. It's where our courthouse is. It's a handful of blocks away from City Hall. It's right in the center. I didn't see anything that indicated that they would approve some of these towers that companies can decorate and make them look like a tree. I'm sorry, I was saying do you have any provisions like that enabling them to disguise or camouflage the tower? We don't. I suppose that under our ordinances, when we approve a conditional use, we can mandate... I guess it would look pretty odd since there aren't that many other trees out there. Well, we have trees. Along the river. Well, I was just going to say, because in Colorado they do that. They make them look like trees. I don't even notice them. In some of the decisions, they frankly say that's so ugly that we're not going to approve that either. Well, let's go to the language of the statute here. Do you agree that there's no separate writing here? That what we're dealing with is either take the plain language in writing and you've got a writing, or is there something separate? Not at all, Your Honor. I think a review of the cases will show that the minutes in several cases have been considered separate writing. There seems to be some confusion in this case between the parties about what constitutes the transcript or the record or the evidence. The fact here is that there was a hearing conducted. The City Council listened to a good 12 or a dozen people that spoke in opposition. The City Council accepted photographs of the neighborhood. The arrow themselves marked four exhibits, and they were specifically entered into the record at the public hearing. Our position would be that those documents, letters, photographs, exhibits offered by the arrow create a transcript. They create the record. The public hearing accumulated all of that evidence and made the record. The public hearing was then concluded. The City Council then entertained a motion to first approve it, fail, and then to deny, and it passed. The minutes then, when transcribed, created a written record that was separate from the evidence that was accumulated. Did that give reasons for why the City Council was acting? Did it elucidate in conjunction with this motion? I've forgotten. They did. Their primary concern was that, based upon the testimony, the letters, the photographs, their conclusion was that the tower would not be in harmony with the characters. That was written up in conjunction with the passage of the motion. It was written up in the minutes, verbatim. Was the motion that passed and the testimony all part of the same proceeding, or were they separate proceedings? The testimony and the minutes? The testimony where the 12 witnesses gave their views and the receipt of the photographs, etc., and then the subsequent motion and vote. What was the temporal relationship of those things? That's a good question because it makes my point that this matter came on for review by the City Council as an agenda item. The Mayor opened a public hearing, asked the public if they had any evidence, comments, and that's when the neighbors came forward to make their comments, to present their letters, to present their photographs. Vieiro then came forward and actually marked their evidence as exhibits, asked that they become a part of the record. Once all of that activity was concluded, the City Council closed its public hearing. The City Council then discussed amongst themselves, made their motions, and eventually passed the motion denying, the picturesque older homes in the neighborhood. Well, didn't you also have a planning commission? I also see that Ms. Herbst-Brown, member of the Historic Preservation Board, and there were some other people that testified, I don't know if they testified, but spoke. But it says here, I think that would be important, but all it says is that she said, told the Council that the tower is not appropriate for a busy intersection. Which gets to my point about how much do you think it has to be to show substantial evidence for court review? The standard universally applied is that to constitute substantial evidence, there must be more than a scintilla, but less than a preponderance. Did any of the folks who were having trouble with their signal present any letters or any information to the Council at this same time? No, sir. My recollection is that no one other than Miero and his representatives appeared to support the conditional use permit. When the court reviews the cases, I'd like to ask the court to consider that there's a trend that has developed along this line of cases. Remembering that the Telecommunications Act was adopted in 1996, the first significant case, in my opinion, that interpreted portions of that act was the case mentioned by Mr. Renner earlier, where City Council considered an application for a conditional use permit, decided that they didn't like it, and they were denied across the permit, and that was it. The Fourth Circuit supported that decision as a sufficient right. Well, my take on that is that perhaps the Fourth Circuit went a little overboard, because two years later, you began to get significant cases beginning with Todd and Newpar, and those cases were the genesis of the third requirement that the writing required by the Telecommunications Act must be separate from the written record. As you indicated, there's nothing in the language of the Act that requires the writing be separate from the written record. Well, Todd, perhaps in response to the denied decision, required that the writing be separate from the written record. Newpar, one of the anchor cases in this line, piled on, decided that that sounds like a good idea, and then over the next half a dozen years, that was assumed, and in fact, this Court assumed that that was the correct standard, that the writing must be separate from the written record. What does that mean, counsel, separate from the written record? Does that mean a separate piece of paper, or is it enough if it's an inch apart in the written law? I don't know. Is that what the Supreme Court's going to tell us? Other courts have asked that. There have been decisions where judges, certain judges have indicated that the minutes are part of the record. There are more decisions that say the minutes aren't necessarily a part of the record, they're separate from the record. The Roswell case that was mentioned earlier involves a decision made by the City Council that was reduced to writing in its minutes. There were a couple of other items I can't remember offhand, but largely that was based upon the City Council's decision. Well, that's kind of what North Platte did. What is this whole, this is in the minutes, this is in the minutes of the City Council of North Platte, isn't it? Yes, the minutes are in writing, and at least the City Council and the City felt that their minutes were separate from the written record that they developed during the public hearing. Not part of the minutes, but separate from the minutes. Well, the motion is reflected in the written minutes. I'm not sure the Supreme Court is going to answer the question. All the question says, the question presented is whether a document from the state or local government stating that an application has been denied, but providing no reasons whatsoever for the denial, can satisfy the statutory quote-in-writing end of quote requirement. Now, they could read that really narrowly and it wouldn't help us much at all. Some courts have done that. They're all over the place. But I think the trend is that courts are beginning to become, in my opinion, more pragmatic and take the approach that Judge Gerrard took by stating that those minutes were in writing, and those minutes tell you what the basis for the City Council's decision was, and with those minutes in that decision, I can go to the written record and I can see substantial evidence to support that decision made by the City Council. That was a decision by Judge Gerrard, and I think he's following a trend that has presented itself in this Roswell case. The Roswell case came a month after another case out in Georgia called Milton, and it laid the basis for Roswell. Very important cases and excellent explanation of why the minutes can substantiate the separate writing to satisfy the statute. With that, I would like to make a point that the judge also made a determination that Vieiro, in this case, did not prove its cause of action on the claim that there's a prohibition of service. The burden is on the provider to prove that without this tower, they will be prohibited from providing service. Judge Gerrard found that the burden is on the provider to prove, first, that there is indeed a significant gap that must be filled, and two, there are no less intrusive alternatives. Judge Gerrard reviewed the record and made a determination that there was absolutely no evidence presented by Vieiro to support their burden. But did the City Council address this business about the service? I mean, the statute seems to say that providers of this kind of service shouldn't be hometown, so to speak, so that they're hamstrung in providing their service. And didn't the City of North Platte have a duty to discuss that aspect of the case, too? They were told, we can't provide the service here that the Communications Act allows us to provide or says we should provide. Isn't that a gap in the minutes? Actually, I would submit that the burden to show that is on the provider. Well, we've heard that they offered evidence to the City Council that there were these gaps, and that's why they had selected this spot. The City Council, the things that I've read, didn't discuss that aspect of it at all, did they? I can't say that they did in any depth at all. So there may be some statutory problems that are deeper than this keeping in the minutes and so forth. The overwhelming weight of authority is that that is a part of the burden of the provider, and that if they don't get past that burden, if they don't get them to listen to them on that aspect, that's their problem. Is that what you're saying? Perhaps. Okay. Okay, your time's expired. Thank you. Mr. Renner, is there anything new that you want to add? If I could have one minute, Your Honor, I think I can... Okay, one minute. Judge Smith, if you look at Joint Appendix at pages 83 and 84, that is the entirety, those two pages, of the writing that relates to the City Council's review of evidence and decision. 83 and 84 of the Joint Appendix. Judge Riley, you mentioned that there was also a planning commission hearing, and I agree that that's part of the written record. It's also in the Joint Appendix. It starts at page 198. Yeah. And one thing I'd like to ask the Court to do is compare what was said at the planning commission meeting to what was said at the City Council meeting in the minutes, at least. The planning commission report does not use the word historic anywhere. That's the body that advises the City Council, and if you look at the evidence that we see, most of the written evidence there are related to health concerns, which are off the table under the federal statute. The historic concept comes in only in that one paragraph in the City Council minutes that I read to you. That's the only place it shows up, and as you pointed out, Judge Riley, the person that's on the North Platte Historic Preservation Board testified at the City Council hearing. She didn't say a word about historic history. She said it's not appropriate for the busy intersection. Thank you very much. Thank you. Well, it's very interesting, particularly for us Nebraskans. It may be real boring if you're from Arkansas because we in Nebraska are familiar with it. So thank you. We enjoyed it. We'll take it under advisement. Thank you, Your Honor. Thank you.